# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>JOSEPH A. BUNDY,<br><br>               Respondent,<br><br>   and<br><br>PAMELA J. RUSH,<br><br>               Appellant. | No. 51968-2-II<br><br><br><br>PARTIALLY PUBLISHED<br>OPINION |

GLASGOW, J.—Joseph A. Bundy, a police officer, retired at age 56. His former spouse, Pamela J. Rush, sought modification of Bundy's child support obligation. The superior court concluded that Bundy's full retirement did not make him voluntarily underemployed or unemployed under RCW 26.19.071(6) for purposes of imputing income to calculate his child support obligation.

Rush appeals, arguing that the superior court abused its discretion when it calculated Bundy's income using his actual income from retirement benefits and rental income rather than imputing his prior salary. Rush also asserts that the superior court failed to include all applicable income sources in determining Bundy's income. Finally, Rush contends that the superior court improperly failed to order proportionate contributions to their child's expenses for extracurricular activities.

In the published portion of this opinion, we hold that a retired person is not voluntarily underemployed or unemployed under RCW 26.19.071(6) if their retirement was reasonable given

all the facts and circumstances. We affirm the superior court's conclusion that Bundy was not underemployed or unemployed under RCW 26.19.071(6). The superior court did not err when it used Bundy's actual income, including his retirement income, to calculate his child support obligation rather than impute his income.

In the unpublished portion of this opinion, we hold that the superior court did not abuse its discretion in determining the sources of Bundy's income. We remand for the superior court to expressly determine whether the contested extracurricular expenses are reasonable and necessary. We deny Bundy's request for attorney fees on appeal.

FACTS

Rush and Bundy married and had a son. When their marriage was dissolved, Rush and Bundy were both police officers working for the Tacoma Police Department. The superior court's child support order required Bundy to pay $619.50 per month in child support.

Bundy retired with full benefits from the Tacoma Police Department when he was 56 years old. Rush filed a petition for modification of support asking the superior court to modify the parties' child support order. A pro tem commissioner modified the order, finding Bundy voluntarily underemployed under RCW 26.19.071(6) and imputing income to him "based on . . . past earnings." Clerk's Papers (CP) at 307-08. The commissioner imputed income at a historical pay rate of $8,420.58 per month, and added $311.42 per month to reflect income from a rental property. Bundy's monthly child support obligation was changed to $752.00 per month with an increase to $925.00 per month when the child turned 12.

Bundy moved for superior court revision of the commissioner's order. The superior court issued a letter decision granting Bundy's request for revision, finding Bundy was not voluntarily

underemployed because he had earned the right to full retirement benefits. The superior court identified the following facts in support of its decision: (1) law enforcement is a high-risk profession, (2) Bundy was shot three times in the line of duty, (3) Bundy suffered numerous other injuries, and (4) Bundy suffered a stress related heart attack. The superior court also found that law enforcement officers often retire as soon as they can receive full retirement benefits due to the "inherent physical and emotional risks" of law enforcement. CP at 418.

The superior court entered a final child support order setting Bundy's new support amount at $424.73 per month based on his actual retirement earnings and rental income. The superior court's order provided that when his child turned 12, Bundy's obligation would increase to $521.41 per month. The superior court further noted that if Bundy obtained "additional work to supplement his income, [Rush] may bring a motion to adjust child support." CP at 419.

Rush appeals from the superior court's order revising the commissioner's ruling.

ANALYSIS

A.      Standard of Review

Appellate courts review child support modifications for abuse of discretion. *In re Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). Abuse of discretion "'occurs when a decision is manifestly unreasonable or based on . . . untenable reasons.'" *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014) (quoting *In Re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)).

A superior court's decision is unreasonable or untenable "if its factual findings are unsupported by the record," the superior court applied an incorrect legal standard, "the facts do not meet the requirements of the correct standard," or the superior court's decision lies "outside

the range of acceptable choices given the facts and the legal standard." *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). We treat the superior court's findings of fact as verities on appeal so long as those findings are supported by substantial evidence. *Chandola*, 180 Wn.2d at 642. "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." *Id.*

"An appellate court defers to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses." *Thompson v. Hanson*, 142 Wn. App. 53, 60, 174 P.3d 120 (2007), *aff'd*, 168 Wn.2d 738, 239 P.3d (2010). "We do not reweigh or rebalance competing testimony and inferences even if we may have resolved the factual dispute differently." *Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013). If evidence is disputed, it will nonetheless be substantial if the evidence is sufficient to persuade a reasonable person of its truth. *See McCleary v. State*, 173 Wn.2d 477, 514, 269 P.3d 227 (2012).

When the superior court revises a commissioner's child support modification ruling and makes independent findings of fact and conclusions of law, "the superior court revision order supersedes the commissioner's ruling" and our focus is on whether the superior court's order was an abuse of discretionary authority. *In re Marriage of Dodd*, 120 Wn. App. 638, 644, 86 P.3d 801 (2004).

B.     Voluntary Underemployment or Unemployment

Rush argues that the superior court abused its discretion when it declined to find that Bundy was voluntarily underemployed or unemployed. She argues that this court should adopt a bright line rule establishing that any retirement below the age of 67 is voluntary unemployment for purposes of determining child support, even though she conceded at oral argument that this

4

proposal is not supported by legal authority. Wash. Court of Appeals oral argument, *Bundy v. Rush*, No. 51968-2-II (Dec. 5, 2019), at 7 min., 41 sec. through 8 min., 53 sec. and 10 min., 0 sec. through 10 min., 23 sec. (on file with court). She also asserts the superior court's underlying factual findings were not supported by substantial evidence. We disagree with both arguments and decline to adopt Rush's proposed bright line rule in favor of a test that evaluates the overall reasonableness of the retirement, given all relevant facts and circumstances.

RCW 26.19.071 governs the determination of a parent's income in child support cases. RCW 26.19.071(6) provides, in part, that "[t]he court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, *or any other relevant factors*." (Emphasis added.)

1.      Retirement and voluntary underemployment or unemployment

RCW 26.19.071(6) instructs the court to consider and assign weight as it sees fit to "any . . . relevant factors." Where a parent who is obligated to pay child support has retired, the court must consider the overall reasonableness of the parent's retirement to determine whether they are voluntarily underemployed or unemployed. Factors informing the reasonableness of retirement may include, but are not limited to, the nature of the parent's preretirement employment, the duration of the parent's career in their profession, the parent's eligibility for retirement benefit programs such as the Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF),[1] whether the parent is eligible for full retirement benefits, the parent's health and age, the likelihood

---

[1] LEOFF Plan 2 applies to Bundy because it applies to "persons who first became members of the [LEOFF] system on and after October 1, 1977." RCW 41.26.030(23).

of the parent obtaining another job, the effect of the retirement on the child's wellbeing and any other facts relevant to the particular case.

An overall reasonableness test for determining whether or not a retired parent is voluntarily underemployed or unemployed is consistent with RCW 26.19.071(6). We decline to endorse Rush's proposed bright line rule that a superior court must find a parent voluntarily underemployed or unemployed and must impute historical income whenever the parent retires before age 67. This rule would be inconsistent with the statute, which expressly contemplates consideration of all relevant factors. RCW 26.19.071(6); Wash. Court of Appeals oral argument, *supra,* at 10 min., 0 sec. through 10 min., 23 sec.

Consideration of the overall reasonableness of a parent's retirement is also consistent with the law in other jurisdictions, which we find persuasive. *See* Lewis Becker, *What Is Versus What Might Be*, FAM. ADVOC., Fall 2000, at 18 (describing a test that considers "the overall reasonableness of the retirement when it is volitional and not the result of ill health"). In *Pimm v. Pimm*, 601 So. 2d 534, 537 (Fla. 1992), for example, the Florida Supreme Court held that "[i]n determining whether a voluntary retirement is reasonable, the court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire." *See also Deegan v. Deegan*, 254 N.J. Super. Ct. 350, 357-58, 603 A.2d 542 (App. Div. 1992) (noting that the "'reasonableness' of the early retirement should be a factor" and explaining that "whether a spouse may voluntarily retire will depend on the individual circumstances of a particular case").

When considering whether voluntary retirement constitutes voluntary underemployment or unemployment, we reject a bright line test based solely on the parent's age.[2] We instead conclude that courts should consider the overall reasonableness of the retirement based on all relevant facts and circumstances. Although we have discussed potentially relevant considerations above, these considerations are nonexclusive, and the superior courts are in the best position to determine what factors are relevant in any particular case.

2.      Bundy's retirement

Rush argues that the superior court's factual findings were not supported by substantial evidence, and the court therefore abused its discretion in finding that Bundy was not voluntarily underemployed or unemployed. We disagree.

Although the parties agree that the superior court erred when it found Bundy had been shot three times in the line of duty, the court otherwise relied on appropriate considerations in finding that he was not voluntarily underemployed or unemployed. For example, the superior court considered the amount of time Bundy spent serving the community in law enforcement, his mental and physical health, and the nature of his occupation.

While the parties dispute some of the evidence that the superior court considered in assessing these factors, disputed evidence is still substantial so long as it is sufficient to persuade a reasonable person of its truth. *See McCleary*, 173 Wn.2d at 514. We do not reweigh competing

---

[2] We also reject the superior court's conclusion that retirement is the equivalent of full time gainful employment. The superior court explained in its letter ruling that, under the circumstances of this case, "earning the right to full retirement benefits is the equivalent of full-time gainful employment." CP at 418. This conclusion is not supported by the definitions of "gainful employment" set forth in *In re Marriage of Peterson*, 80 Wn. App. 148, 153-54, 906 P.2d 1009 (1995), nor is it supported by any other legal precedent. The superior court erred in adopting this conclusion.

testimony or inferences or make credibility determinations. *Bale*, 173 Wn. App. at 458. Bundy presented evidence that he had ongoing physical problems, including stress related heart problems caused by his work. Relying on evidence that Bundy presented, the superior court concluded, despite conflicting statements from Rush, that Bundy had suffered injuries and heart problems. The superior court considered relevant and appropriate factors and did not abuse its discretion when it determined that Bundy was not voluntarily underemployed or unemployed.

CONCLUSION

We affirm the superior court's decision not to impute income to Bundy. When applying RCW 26.19.071(6) to determine whether a retired parent is voluntarily underemployed or unemployed, courts should assess the overall reasonableness of the parent's decision to retire, considering all factors relevant to a particular case.

A majority of the panel has determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports. The remainder of this opinion will be filed for public record in accord with RCW 2.06.040, and it is so ordered.

A.    Rush's Other Claims

1.    Bundy's other income

Rush argues that the superior court abused its discretion under RCW 26.09.071(3) when evaluating other potential sources of income beyond Bundy's retirement benefits.

RCW 26.19.071(3) provides that a parent's monthly gross income for purposes of calculating a child support obligation "shall include income from any source, including: . . . (n) [p]ension retirement benefits . . . and (u) [i]ncome from self-employment, rent, royalties, contracts, proprietorship of a business, or joint ownership of a partnership or closely held corporation." RCW

26.19.075(1)(b) permits the court to deviate "from the standard calculation based on a finding that a particular source of income included in the calculation of the basic support obligation is not a recurring source of income. Depending on the circumstances, nonrecurring income may include overtime, contract-related benefits, bonuses, or income from second jobs."

Specifically, Rush alleges that the superior court should have included in Bundy's gross income calculation (1) proceeds from Bundy's house flipping activities, (2) a higher amount of rental income, and (3) Voluntary Employee Beneficiary Association (VEBA) plan benefits. We disagree.

i.      Real estate proceeds

In 2017, Bundy bought, improved, and then sold a home along with his new wife and brother. The superior court did not abuse its discretion when it found that any income Bundy may have earned from this real estate transaction was nonrecurring income under RCW 26.19.075(1)(b) and was not income for purposes of calculating his child support obligation under RCW 26.19.071(3).

Similarly here, there was a tenable basis for the superior court to have accepted Bundy's explanation that his real estate transaction was a one-time activity and that Bundy had no expectation of continuing income from that activity. Bundy explained in a sworn declaration that "[t]he house took 10 months to complete because of my physical problems . . . and the amount of time that was put in against the risk of profits is not worth it. I am not able nor willing to do this again." CP at 260. Even though Rush has questioned the credibility of these assertions, we do not reweigh the superior court's credibility assessments. *Bale*, 173 Wn. App. at 458.

ii.     Rental income

The superior court also did not abuse its discretion by finding that Bundy's monthly rental income was $311.42 per month. Although Rush disputes the evidence underlying the superior court's finding, abuse of discretion review means that this court will not "reweigh or rebalance competing testimony." *Id.* Bundy's declaration provides substantial evidence supporting the superior court's finding that Bundy's rental income was $311.42 per month.

iii.     VEBA benefits

Finally, the superior court did not abuse its discretion by deciding to exclude Bundy's VEBA benefits from his monthly income under RCW 26.09.071(3).

The parties did not cite, and we have not located, any legal authority supporting Rush's contention that VEBA benefits fall under definitions of "income" included in RCW 26.19.071(3). Thus, Rush has not established a basis to reverse the superior court's decision to exclude VEBA benefits from Bundy's income. The record reveals conflicting evidence about the process by which Bundy's VEBA benefits were made available to him, which was relevant to whether VEBA benefits were recurring income. We defer to the superior court's resolution of conflicting evidence so long as the evidence is sufficient to persuade a reasonable person of its truth. *McCleary*, 173 Wn.2d at 514. Rush has not established error with regard to Bundy's VEBA benefits, and we therefore affirm the superior court on this issue.

2.     Extracurricular expenses in excess of basic support obligation

Rush argues that the superior court abused its discretion under RCW 26.19.080 when it did not order both parents to pay proportionate shares of the expenses for their son's extracurricular activity expenses in excess of the basic support obligation. The superior court made no finding as

to whether these expenses were in fact reasonable and necessary. We remand to the superior court for an express determination on reasonableness and necessity.

Under RCW 26.19.080(4), the court "may exercise its discretion to determine the necessity for and the reasonableness of all amounts ordered in excess of the basic child support obligation." RCW 26.19.080(3) provides that "special child rearing expenses . . . shall be shared by the parents in the same proportion as the basic child support obligation."

Under Washington cases applying RCW 26.19.080(3), courts first consider whether the expenses in excess of the basic child support obligation are reasonable and necessary. *See In re Marriage of Yeamans*, 117 Wn. App. 593, 600, 72 P.3d 775 (2003). Then, if the court finds these extraordinary expenses are reasonable and necessary, it must allocate them proportionately. *See id.*; *see also Murphy v. Miller*, 85 Wn. App. 345, 349, 932 P.2d 722 (1997).

Here, the expenses Rush argues should have been divided proportionately include "little league, club baseball and associated clinics, club and recreational soccer, recreational or club, football, karate, and numerous other youth camps." Br. of Appellant at 26. These are similar to the extracurricular activities courts have deemed to be within the additional support provision of RCW 26.19.080(3). *See State ex rel. J.V.G. v. Van Guilder,* 137 Wn. App. 417, 427-28, 154 P.3d 243 (2007) (private school and extracurricular activities); *In re Marriage of Daubert & Johnson*, 124 Wn. App. 483, 497, 99 P.3d 401 (2004) (band trip and SAT prep classes), *abrogated on other grounds by In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007). However, the superior court here made no finding as to whether these expenses were in fact reasonable and necessary. Thus, we remand to the superior court for an express determination on reasonableness and necessity. *See* RCW 26.19.080(4); *Yeamans*, 117 Wn. App. at 600.

No. 51968-2-II

B.      Attorney Fees on Appeal

Bundy requested attorney fees on appeal under RCW 26.09.140, but he failed to file a financial affidavit with this court. We therefore decline to further entertain his request.

CONCLUSION

We affirm the superior court's calculation of Bundy's income, but we remand for an express determination as to whether the disputed extracurricular activities are necessary and reasonable.

Glasgow, J.

We concur:

Maxa, P.J.

Melnick, J.